UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARCHELLE EPPERSON**,  Case No. 1:10 CV 1502

    Plaintiff,  Judge Sara Lioi

    v.  REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.  Magistrate Judge James R. Knepp II

## Introduction

Plaintiff Marchelle Epperson seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be reversed and remanded.

## Procedural Background

Plaintiff filed an application for SSI and DIB on September 20, 2006, alleging disability as of January 1, 2006. (Tr. 89-99). Plaintiff later amended her disability onset date to August 25, 2006. (Tr. 28, 109). Plaintiff met the insured status requirement for DIB through December 31, 2010. (Tr. 12); *see* 20 C.F.R. § 404.130. Plaintiff's claim was denied initially and on reconsideration. (Tr. 64-67). An ALJ held a hearing on January 23, 2009, at which Plaintiff appeared with her attorney and testified. (Tr. 23-60). Debra Lee, a vocational expert (VE), also testified at the hearing.

In a written decision dated March 18, 2009, the ALJ found Plaintiff not disabled. (Tr. 10-22). The ALJ found Plaintiff had severe impairments of "major depressive disorder, anxiety disorder, chronic obstructive pulmonary disease, and diabetes mellitus." (Tr. 12). The ALJ found that before February 1, 2006, Plaintiff had the residual functional capacity to perform:

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) but with the following: no driving or operating machinery; the ability to understand, remember, and carry out simple instructions and perform repetitive tasks; with occasional interaction with co-workers/supervisors, but with no interaction with the general public on behalf of the employer.

(Tr. 16). The ALJ found, based on the testimony of the VE, Plaintiff could not perform any past work, but retained the capacity to perform a significant number of jobs in the national economy. (Tr. 21). The ALJ's decision became the final decision of the Commissioner following the Appeals Council's denial of review on May 17, 2010 (Tr. 1-3). *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then filed the instant case seeking judicial review of the ALJ's decision on July 7, 2010. (Doc. 1).

**Factual Background**[1]

*Mental Health*

Plaintiff has a history of mental health issues including depression and anxiety, and presented evidence of treatment by numerous doctors from 2005 through 2008. (Tr. 210-11, 216-19, 312, 315, 318, 320, 325, 332-38, 340, 398-407, 409-10, 428-35, 473-83, 485-500, 503-04, 507, 511).

In December 2006, state agency consultative psychologist Paul Josell evaluated Plaintiff. (Tr. 288-91). He concluded Plaintiff's ability to relate to others is variable, depending on her pain, anxiety, and mood, but that "[o]verall, there appears to be mild to moderate impairment in this area."

---

[1] Although Plaintiff also presents medical evidence of diabetes, her challenges to the ALJ's decision focus on her mental health and chronic obstructive pulmonary disorder diagnoses. As such, the Court will also focus on those records.

2

(Tr. 290).  She was not significantly impaired in her ability to understand and follow directions, but was moderately impaired in her ability to maintain attention, concentration, persistence, and pace to perform routine tasks.  (*Id.*).  Finally, her mental ability to withstand the stress and pressures associated with daily work activity was moderately impaired.  (Tr. 291).

Also in December 2006, state agency reviewing consultant Vicki Casterline, Ph.D., reviewed Plaintiff's medical records.  (Tr. 293-309).  She concluded Plaintiff would be moderately limited in her ability to maintain attention and concentration for extended periods, in social interactions, and in the ability to respond appropriately to changes in the work setting.  (Tr. 292-93).  Dr. Casterline stated Plaintiff would be moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 293). In the functional capacity assessment section of her report, Dr. Casterline noted Plaintiff is "moderately impaired in maintaining attention, concentration, persistence, pace and stress tolerance."  (Tr. 294).  Dr. Casterline again noted moderate difficulties in maintaining concentration, persistence, or pace on the psychiatric review technique form.  (Tr. 306). On May 7, 2007, Robelyn Marlow, Ph.D., a state agency psychologist, reviewed Plaintiff's updated medical records and affirmed Dr. Casterline's assessment. (Tr.  316-17).

Two of Plaintiff's treating nurses completed medical source statements in 2008 and opined Plaintiff was markedly limited in many areas of mental functioning.  (Tr. 409-10, 503-04).

*Pulmonary Impairment*

Dr. Richard Koletsky noted Plaintiff had COPD in May 2007.  (Tr. 392).  He continued to note COPD in his records in November 2007 and January 2008.  (Tr. 389, 391).

In November 2008, Plaintiff went to the hospital for pneumonia and shortness of breath. (Tr. 526-28). A chest x-ray showed "bilateral interstitial and alveolar infiltrates" and a CAT scan "indicated developing pulmonary edema, multifocally air space infection or an acute pneumonitis." (Tr. 526). The doctor's assessment was: pulmonary infiltrates, chest pain, cough, and diabetes. (Tr. 527).

Plaintiff underwent a pulmonary function study in November and December 2008. (Tr. 516-20). This was a follow up to her hospital visit. (Tr. 519). The doctor's impression was "pneumonia – resolved" and COPD. (Tr. 520). Spirometer results "show[ed] moderate reduction of forced vital capacity, moderate reduction in FEV1, with a normal FEV1/FVC ratio of 72%." (Tr. 523).

A December 2008 psychiatric progress note from Pathways, Inc. states Plaintiff "was in hospital for pneumonia", and "[h]as COPD." (Tr. 485). A note from Plaintiff's diabetes doctor the same month states: "Just got out of hospital 7 days pneumonia." (Tr. 533). Doctors' notes indicate Plaintiff was a smoker. (*See, e.g.*, Tr. 210, 312, 433).

*Third Party Statements*

Plaintiff submitted several third party statements in support of her claims. Her friend of twenty years, Susan Caranci, stated she sees Plaintiff three to four times a week and believes Plaintiff's daily activities and ability to maintain social functioning are extremely restricted by her mental issues. (Tr. 174-75). Specifically, she sated: "There have been numerous occasions [Plaintiff] has called very upset crying from anxiety and depression. [Plaintiff] suffers from very bad panic attacks. And constantly worries and cries. I try to reassure her. But her mental illness is overwhelming." (Tr. 175). She stated Plaintiff suffers from anxiety and panic attacks and is in pain all the time. (Tr. 176-77).

Plaintiff's aunt, Sharon Simmons, stated she speaks to Plaintiff daily and sees her once or twice per week. (Tr. 178). She said Plaintiff is in pain all the time, and that she can tell by Plaintiff's facial expressions, wringing of her hands, and rocking back and forth. (*Id.*). Ms. Simmons said when Plaintiff physically exerts herself, "she gets weak and can't breathe." (*Id.*). Ms. Simmons noted she was "[c]oncerned about [Plaintiff's] extreme physical and emotional discomfort." (Tr. 179). She also noted that "[a]lmost everytime [she] sees [Plaintiff] she has difficulty breathing. She often cries. She finds it difficult to focus." (Tr. 183).

Another of Plaintiff's friends, Kathy Isabella stated she sees Plaintiff monthly, and sees her in pain. (Tr. 180). She stated Plaintiff's "[d]epression is so clear because of achiness. Anxiety is [clear] because of her shaking, holding herself, rocking, and look on her face (distressed). Her exhaustion is clear in her body posture like putting her head on the desk when we worked together." (Tr. 180). Ms. Isabella stated that "when [Plaintiff's] psych meds are working right, she is much more like her upbeat, perky self." (Tr. 181).

Finally, Plaintiff's husband noted Plaintiff has a long list of mental health symptoms. (Tr. 190). He believed her activities of daily living are extremely limited by her mental issues and her ability to maintain social functioning was moderately limited. (Tr. 191).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### Discussion

Plaintiff raises two issues: 1) the ALJ's step five finding is not supported by substantial evidence because his hypothetical question did not include any restrictions from Plaintiff's COPD or a limitation on concentration, persistence, and pace; and 2) the ALJ failed to evaluate third party statements.

*Step Five Determination*

To meet his burden at the Fifth Step, the Commissioner must make a finding "'supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Education & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc.*

7

*Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

*Concentration, Persistence, and Pace*

In *Ealy*, the Sixth Circuit found it was error for an ALJ to omit a restriction to moderate difficulties in concentration, persistence, and pace from his hypothetical question to the VE where the ALJ had elsewhere concluded the claimant had such restrictions. 594 F.3d at 516-17. The court found that a hypothetical limiting claimant to simple tasks did not adequately convey the claimant's restrictions. *Id*. The court held: "Because the controlling hypothetical inadequately described [the claimant's] limitations, the expert's conclusion that [the claimant] could [do other work] does not serve as substantial evidence that [the claimant] could perform this work." *Id.* at 517.

Here, the ALJ asked the VE to consider a hypothetical individual of the same age, education, and work experience as Plaintiff who was limited to:

> a full range of medium work except that this person is further limited in that they are not able to drive or operate machinery of any kind. This person is further limited to understanding and remembering and carrying out simple instructions only, performing repetitive tasks. This person's limited to occasional interaction with co-workers and supervisors, with no direct interaction or dealing with the general public on behalf of the employer.

(Tr. 55). In his written opinion, the ALJ, in evaluating Plaintiff's mental impairments, cited state agency physicians and stated: "Based on the evidence regarding the claimant's actual functioning as discussed above, the Administrative Law Judge finds that the claimant has moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; *moderate*

8

*difficulties in maintaining concentration, persistence, or pace*; and no episodes of decompensation[.]" (Tr. 16 (emphasis added)). In his RFC determination, the ALJ also explained he gave "greater weight" to the state agency physician's assessments, and "limited weight" to the conclusions of Plaintiff's treating nurses. (Tr. 20). Those state agency assessments included the moderate limitation in concentration, persistence, and pace the ALJ himself adopted. (Tr. 16, 290, 294, 306).[2] The ALJ here therefore committed the same error as the ALJ in *Ealy* – he omitted a moderate limitation in concentration, persistence, and pace from the hypothetical question and the RFC – despite crediting it in his decision. 594 F.3d at 516-17; *see also Renn v. Comm'r of Soc. Sec.*, 2010 WL 3365944, *6 (S.D. Ohio). As such, the VE's testimony cannot serve as substantial evidence to support the ALJ's decision at Step Five and remand is required.

*COPD*

Plaintiff secondly contends the ALJ "failed to include obvious restrictions attributable to a severe impairment that he, himself, had found – COPD." (Doc. 14, at 9). She continues: "Clearly, the ALJ should have included restrictions against environmental extremes and pollutants/irritants." (*Id.*). Defendant responds that Plaintiff has not provided any medical evidence in support of such a restriction. Plaintiff focuses her reply brief on her mental limitations and does not mention COPD restrictions again.

In his opinion, the ALJ found Plaintiff's COPD to be a severe impairment. (Tr. 12). He discussed Plaintiff's pulmonary impairment, focusing on her November 2008 hospital visit. (Tr. 18 (citing Tr. 515-28)). Plaintiff bears the burden of proving the "existence and severity of limitations

---

[2] Contrary to the Commissioner's argument, Dr. Casterline included the moderate limitation on concentration, persistence, and pace in Section III – the functional capacity assessment portion of the form. (Tr. 294).

caused by her impairments". *Jones*, 336 F.3d at 474. All Plaintiff provided here were some vague notes about COPD from Dr. Koletsky (Tr. 389-92) and records of a hospital visit and follow-up care. (Tr. 516-20, 526-28). Plaintiff presented no evidence that any doctor placed specific environmental restrictions on her and did not testify about her pulmonary impairment during the hearing. As such, the ALJ did not err in failing to include such restrictions in his hypothetical or RFC.

*Third Party Statements*

The regulations provide an ALJ "may . . . use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work." 20 C.F.R. §§ 404.1513; 416.913. "Other sources" include non-medical sources such as "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy." *Id.* §§ 404.1513(d)(4); 416.913(d)(4). SSR 06-03p, 2006 WL 2329939, clarifies how the ALJ considers opinions from sources who are not "acceptable medical sources" under the regulations. SSR 06-03p explains that certain factors should be used to weigh opinions of non-medical sources, including: "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.*" Id.* at *6. Finally, the ruling details what explanation an ALJ must give for his consideration of other source evidence:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator *generally should explain the weight given to opinions* from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, *when such opinions may have an effect on the outcome of the case.*

*Id.* (emphasis added).

Plaintiff is correct in asserting the ALJ failed to discuss the third party statements in his decision. The question is thus whether the ALJ was required to discuss them, that is, whether they

may have affected the outcome of the case. Here, the ALJ partially rejected Plaintiff's own subjective complaints about her symptoms based on her: 1) part-time work during the period of alleged disability; 2) visits with friends; 3) travel to Tennessee; 4) participation in Bible Study; and 5) caring for a pet. (Tr. 19, 31-34, 39, 41, 43, 44).[3] The ALJ's reasons for discounting Plaintiff's credibility may also be reasons for discounting the third party statements, which provide summaries of Plaintiff's mental impairments as perceived by others. However, the ALJ never provided any discussion of the third party statements or his reasons for rejecting them. Because remand is already required as noted above, on remand the ALJ should also discuss the third party statements in accordance with SSR 06-03p. *See, e.g.*, *Eskridge v. Astrue*, 569 F. Supp. 2d 424, 439-40 (D. Del. 2008) (remanding where ALJ "did not mention or provide any reasons for rejecting statements from plaintiff's family and friends" and explaining: "The ALJ must consider whether the statements of plaintiff's family and friends are consistent with the objective medical evidence and, if the ALJ rejects such evidence, provide reasons for so doing").

## Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying SSI and DIB not supported by substantial evidence for the reasons discussed above. The undersigned therefore recommends the Commissioner's decision be reversed and remanded.

s/James R. Knepp II<br>
United States Magistrate Judge

---

[3] Plaintiff has not challenged the ALJ's credibility determination. Although it is a distinction with no effect on the current decision, the Court notes Plaintiff testified she planned to join a Bible study group in the future (Tr. 44), not that she was currently participating as the ALJ noted.

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).